UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PAUL ALLEN ADAMS,

        Plaintiff,

v.                                      Case No. 18-cv-1468-pp

DR. LARSON, NP FRANK,
HSU MANAGER WHITMAN,
JOE NARANCE, NURSE DEYOUNG,
RD LEWDWIG, DOES, and
L. BARTOW,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 5), AND SCREENING PLAINTIFF'S COMPLAINT (DKT. NO. 1)**

The plaintiff filed a complaint under §1983, alleging that the defendants violated his constitutional rights. Dkt. No. 1. He also filed a motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, and a motion to appoint counsel, dkt. no. 5. This decision resolves the plaintiff's motions and screens his complaint.

I.    <u>Motion for Leave to Proceed without Prepayment of the Filing Fee</u>

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the case filing fee, if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b).

1

On October 4, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $7.90. Dkt. No. 6. The court received that fee about a week later. The court will grant the plaintiff's motion to proceed without prepayment of the filing fee and will require him to pay the remainder of the $350 filing fee over time in the manner explained at the end of this order.

II.  Screening the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States, and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal

construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A.  **The Plaintiff's Allegations**

The complaint alleges that on September 8, 2017, the plaintiff had an EGD procedure, four esophageal varices banded and a stomach biopsy. Dkt. No. 1 at 2. According to the plaintiff, the after-care orders called for a soft/liquid diet for at least two to three days or until the plaintiff could swallow solid foods to prevent the varices from rupturing. Id. The plaintiff says the orders also called for medication to reduce swelling and promote healing. Id.

The plaintiff alleges that he returned to his institution after his procedures, on the same day, at about 8 p.m. Id. According to the plaintiff, defendants DeYoung and a John Doe nurse wrote an order for a one-day soft diet, which was to end on September 8, 2017 at 5 p.m., three hours *before* the plaintiff returned from the hospital. Id. at 2-3. The plaintiff asserts that DeYoung and the John Doe nurse also sent back the medication specified in the after-care order. Id. at 3.

The plaintiff alleges that he wrote to defendants Whitman, Frank and Lewdwig to complain that he was hungry, that he wasn't receiving a soft/liquid diet, and that he had been given two peanut butter sandwiches upon his return from the hospital. Id. The plaintiff says he also wrote to Dr. Larson, who had co-signed the original orders denying him a soft/liquid diet and the medication, and told Larson that he was being forced to go without food. Id. The plaintiff alleges that he also wrote to Warden Hepp (who is not a defendant) and informed Hepp that he was not receiving a soft/liquid diet or medication. Id. The plaintiff told Hepp that he was starving and in pain. Id.

3

According to the plaintiff, Hepp, Larson, Frank, Whitman, Narance, DeYoung, Lewdwig and unnamed nurses and correctional officers all told him that the health services orders were appropriate. Id. DeYoung and John Doe nurse allegedly informed the plaintiff, "'We know better than the doctors do about what you need,' the current orders stand." Id. The plaintiff states that he wrote to the defendants for several weeks, complaining that he was "having to choke down solid foods in order to eat" and that he was in pain and was bleeding. Id. at 3-4. According to the plaintiff, all the defendants denied his complaints. Id. at 4.

The plaintiff asserts that eventually (he does not say when), he was called to health services and he spoke to Lewdwig, who told him that he did not need a soft diet. Id. The plaintiff states that he talked to her a second time (he does not say when), at which time she told him that she had consulted his medical file and agreed that health services had been wrong and failed to do the proper follow-up. Id. The plaintiff explains that Lewdwig apologized and told him that they would use his case as an "example as a learning tool." Id.

The plaintiff states that on September 8, 2017, the day he returned from the hospital, he wrote to inmate complaint examiner Bartow and asked him to accept his complaint as an emergency because he was being denied a soft diet and after-care medications. Id. The plaintiff says that Bartow rejected his complaint that same day (the plaintiff does not explain the basis of Bartow's rejection). Id. The plaintiff states that he re-filed his complaint on September 13, 2017; Bartow and the corrections complaint examiner from the office of the Secretary of the Department of Corrections affirmed his complaint. Id. The plaintiff states that as of the date he wrote the complaint, it remained hard for him to swallow. Id.

4

### B. The Court's Analysis

To state a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment, a plaintiff must allege that (1) he suffered from an objectively serious medical condition, and (2) that the defendants were deliberately indifferent to that condition. Wilson v. Adams, 901 F.3d 816, 820 (7th Cir. 2018) (citations omitted). Officials are deliberately indifferent when they disregard known conditions that pose excessive risks to an inmate's health. Id. (citations omitted). For example, "[a]llegations that a prison official refused to follow the advice of a medical specialist for a non-medical reason may at times constitute deliberate indifference." Perez v. Fenoglio, 792 F.3d 768, 778 (7th Cir. 2015) (citations omitted).

The court will allow the plaintiff to proceed against defendants Larson, Frank, Whitman, Narance, DeYoung, Lewdwig and Doe nurses based on his allegations that they refused to give him a soft food/liquid diet and after-care medication following his procedures, despite hospital orders to do so, and despite his complaints of pain and an inability to eat. Because the plaintiff does not know the names of the Doe nurses, he will have to learn their names by serving discovery requests on the named defendants. The plaintiff should not serve discovery requests until after the named defendants respond to his complaint and after the court enters a scheduling order setting a deadline for the completion of discovery. Once the plaintiff learns the nurses' names, he should file a motion to substitute their names for the Doe placeholders.

The court also will allow the plaintiff to proceed on a deliberate indifference claim against inmate complaint examiner Bartow, based on his allegations that Bartow initially rejected his emergency complaint that he was not receiving a soft food/liquid diet or his after-care medications. The court

5

acknowledges that an inmate complaint examiner is not deliberately indifferent if he was merely executing his duties when he rejected a prisoner's inmate complaint. See Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). The Seventh Circuit has found, however, that there can be some circumstances where a complaint examiner could perform his "appointed tasks with deliberate indifference to the risks imposed on prisoners." Id. One example the Seventh Circuit gives is the example of a "complaint examiner who intervened to prevent the medical unit from delivering needed care . . . ." Id. The plaintiff does not give many details, but it appears that he may be alleging that he explained to Bartow that he wasn't getting the help he needed from other prison staff, and that he was asking Bartow to accept his complaint on an "emergency" basis solely for the purpose of trying to get someone to give him medical help. Because the court has an obligation at screening to construe a plaintiff's complaint broadly and draw every reasonable inference in the plaintiff's favor, the court will allow the plaintiff to proceed with a deliberate indifference claim against Bartow.

The court will not allow the plaintiff to proceed on claims against Doe correctional officers based on his single, vague allegation that he complained to them about not receiving the after-care diet and medication. The plaintiff appears to have had a lot of contact with health services staff about his complaints. "[T]he law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so." Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010). This makes sense—correctional officers aren't doctors or nurses, and don't have medical training. Given the plaintiff's frequent contact with health

6

services staff about his after-care diet and medications, the court finds that the Doe correctional officers were entitled to defer to the medical staff's judgment.

III. <u>Motion to Appoint Counsel</u>

The plaintiff also filed a document that he titled "RE: Adams v. Larson 17-cv-699 and 18-cv-1468; motion for counsel; 1983 complaints 1. Un[necessary] pain & suffering 2. Intentionally causing harm/possible death." Dkt. No. 5. This pleading contains a lot of information about multiple cases, including this one. On page five of the pleading, there is a sub-heading titled "Motion for: Appointmen[t] of Counsel Adams v. Larson 17-cv-699." It not clear to the court whether the plaintiff wants the court to recruit a lawyer to represent him in *this* case, or only in Case No. 17-cv-699. The court understands that it costs the plaintiff money to mail motions to the court, but in the future, the plaintiff must prepare a separate motion for each case. For example, if the plaintiff wants the court to do three things for him in case number 17-cv-699, he can file *one* motion in *that* case, asking the court to do those three things. But he cannot also ask the court, in that same motion, to do things in case number 18-cv-1557. He must file a separate motion in case number 18-cv-1557. He can put more than one motion in a single envelope, but he can't include requests in more than one *case* in a single motion. Out of an abundance of caution, the court will assume the plaintiff is asking it to recruit a lawyer to represent him in both cases. The court will address the plaintiff's request for a lawyer in Case No. 17-cv-699 in a separate decision. The court will deny his request for a lawyer in this case.

In a civil case, the court has the discretion to recruit a lawyer for individuals who are unable to afford one. <u>Navejar v. Iyola</u>, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); <u>Ray v. Wexford Health Sources, Inc.</u>, 706

7

F.3d 864, 866-67 (7th Cir. 2013). First, however, the plaintiff must make reasonable efforts to hire a lawyer on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007).

After the plaintiff demonstrates that he has made those efforts, the court will decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks, not only at a plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

The plaintiff has satisfied the first step of the Pruitt process—he has tried to hire a lawyer on his own. Despite that fact, the court will deny his motion at this time because it believes, based on the plaintiff's interactions with the court in this and other cases, that he is capable of representing himself in the early stages of the case. His writing is clear, he remembers and recounts lots of details about who he has interacted with and why he believes their responses to him violated the Constitution, and he is able to coherently explain to the court what he wants and why be believes the court should rule in his favor.

Once the defendants respond to the plaintiff's complaint, the court will set deadlines for completing discovery and filing dispositive motions. During discovery, the plaintiff may ask the defendants to answer his interrogatories (written questions) regarding the alleged events (Fed. R. Civ. P. 33), and he may

ask them to send him documents or records that are relevant to the alleged events (Fed. R. Civ. P.. 34). If, later, the defendants file a motion for summary judgment, the plaintiff may oppose that motion, supporting his version of the events in an affidavit or unsworn declaration under 28 U.S.C. §1746. Because the court believes the plaintiff can handle these tasks on his own, it will deny his motion.

Should circumstances change, the plaintiff may renew his motion. In the event he renews his motion, he should be very specific in explaining what challenges he faces and why he believes he does not have the capacity to overcome those challenges.

IV. <u>Plaintiff's Letter Regarding His Legal Files</u>

On December 26, 2018, the clerk's office received a letter from the plaintiff (dated December 22, 2018), indicating that he'd been in the infirmary at Dodge Correctional since December 10, 2018. Dkt. No. 9. He indicates that he has not had access to his legal files since that time; he has written the infirmary manager, the security director and the warden, but no one has responded. He stated that his next plan was to file an inmate complaint, but opined that that process could take, "at a minimum, 4 months." <u>Id.</u> He stated that he could not be without his legal files for that long, and asked at the end of the letter, "Will this court advise Dodge to give me my legal files." <u>Id.</u>

The court will not order the Dodge Correctional Institution to give the plaintiff his files. At the time the plaintiff wrote the court, he'd been without his files for only twelve days. He does not explain how long he expects to be in the infirmary (he does note that he is there on a temporary hold, pending cancer treatment). Apparently being in the infirmary does not prevent the plaintiff from sending things to the court, because he was able to send this letter. If the

plaintiff ends up in the infirmary for an extended period, and still does not receive his files, he may file a motion asking the court to extend any pending deadlines (and explaining why he is making that request).

V. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Doe Correctional Officers.

The court **DENIES** without prejudice the plaintiff's motion to appoint counsel. Dkt. No. 5.

Under an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order will be electronically transmitted to the Wisconsin Department of Justice for service on defendants Larson, Frank, Whitman, Narance, DeYoung, Lewdwig and Bartow. The court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $342.10 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** the plaintiff to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case.

The court also advises the plaintiff that if he does not timely file documents or comply with other court-ordered requirements, it may result in the court dismissing his case for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 9th day of January, 2019.

                                          **BY THE COURT:**

                                          **HON. PAMELA PEPPER**
                                          **United States District Judge**